1

2

3

4

5

6                        **UNITED STATES DISTRICT COURT**

7                              **DISTRICT OF NEVADA**

8  SIERRA NEVADA SW ENTERPRISES,        )
   LTD., a Nevada limited company,       )
9                                         )
                Plaintiff,                )
10                                        )              3:10-cv-579-RCJ-RAM
         v.                               )
11                                        )              **ORDER**
                                          )
12 JASON KING, P.E., individually and in his )
   official capacity as the NEVADA STATE  )
13 ENGINEER,                              )
                                          )
14              Defendants.               )
                                          )
15 _____ )

16       Currently before the Court is Defendant Jason King, P.E.'s ("Defendant" or "State

17 Engineer") Motion to Dismiss (#3).  The Court heard oral argument on July 19, 2011.

18                                **BACKGROUND**

19       In September 2010, Plaintiff filed a complaint in this Court against Defendant, in both

20 his official and individual capacities.  (Compl. (#1) at 1-2).  Plaintiff alleged that it was bringing

21 the case pursuant to 42 U.S.C. § 1983.  (*Id.* at 2).

22       The complaint alleged the following.  (*Id.*).  Plaintiff owned 309.28 acres of land in

23 Douglas County and 1,237.12 acre feet of groundwater appurtenant to that land.  (*Id.* at 4).

24 On June 30, 2009, Plaintiff filed an application with the State Engineer for change of place and

25 use and point of diversion with respect to that land and water rights.  (*Id.*).  On February 24,

26 2010, Plaintiff filed a second application with respect to the same land and water rights to

27 change the manner of use from irrigation and domestic purposes to quasi municipal and

28 domestic purposes.  (*Id.* at 4-5).  On September 10, 2010, the State Engineer approved the

   application to change the place and use and point of diversion with the condition that the water

1  be used only to irrigate lands already benefitted by surface-water rights.  (*Id.* at 2, 5).  On

2  September 16, 2010, the State Engineer denied the application for a change in the manner

3  of use to quasi-municipal and domestic purposes.  (*Id.*).  The State Engineer based its

4  decisions on the "long-standing policy that supplemental water rights [were] not allowed to be

5  stripped and stand alone independently from the surface-water right and be considered a

6  stand-alone water right for any duty, much less the full duty."  (*Id.* at 5).  The State Engineer's

7  decision resulted in Plaintiff losing "property interest in approximately 1,237 acre feet of

8  groundwater worth $10,000.00 per acre foot for a total of $12,370,000.00" because the

9  decision extinguished Plaintiff's groundwater rights because it already had conveyed its

10 appurtenant surface water rights to others on July 17, 2008.  (*Id.* at 3,6).

11      Plaintiff alleged that the groundwater at issue had been acquired by an application filed

12 with the State Engineer by Stoddard and Jewel Jacobsen ("Jacobsen") on July 5, 1960.  (*Id.*

13 at 5).  Plaintiff was the successor in interest to Jacobsen with respect to the land, groundwater,

14 and surface water rights.  (*Id.*).[1]  The State Engineer did not characterize Jacobsen's

15 ownership of the groundwater right as "supplemental" in the Certificate of Appropriation of

16 Water.  (*Id.*).  Jacobsen's application stated that he planned to use the appropriated

17 groundwater "to supplement the natural river flow to irrigate these lands, under the Carson

18 River Decree."  (*Id.*).  In 1960, the State Engineer did not engage in rulemaking pursuant to

19 NRS Chapters 532, 533, or 534 to establish the meaning of the word "supplement" or

20 "supplemental" and did not establish that water from an underground source could only be

21 used in any given year if the appropriator had exhausted its surface water rights in that year.

22 (*Id.* at 10).  The 1960 Certificate of Appropriation for the groundwater obtained by Jacobsen

23 did not state that the water was "supplemental."  (*Id.*).

24      Plaintiff alleged that, at some time between issuing the certificate to Jacobsen and the

25 present, the State Engineer, without engaging in the rulemaking process or notice and an

26

27      [1]  Jacobsen conveyed the land, groundwater, and surface water rights to Rivertree
28 Ranch, LLC on January 15, 1999.  (Compl. (#1) at 5).  Rivertree Ranch conveyed the land, groundwater, and surface rights to Plaintiff on July 20, 2004.  (*Id.* at 6).

1   opportunity to be heard, made a *de facto* determination that all groundwater rights which

2   coexisted with surface water rights could not be used until the surface water rights were

3   exhausted in any given year.  (*Id.*). The State Engineer ascribed a legal meaning to the word

4   "supplemental" to all groundwater rights such that supplemental groundwater rights could only

5   be used in conjunction with surface water rights and only after the surface water rights had

6   been exhausted in any given year. (*Id.* at 11).  As a consequence of the rulemaking, "if a

7   holder of both the surface water rights and groundwater rights divest[ed] itself of its surface

8   water rights, the groundwater rights [were] extinguished." (*Id.*).  Because the office of the

9   State Engineer was exempt from Nevada's Administrative Procedure Act, pursuant to NRS §

10   233B.039(1)(j), the State Engineer's power to make rules was not constrained by any statute

11   or regulation requiring that such rulemaking comply with due process of law.  (*Id.* at 12).  The

12   State Engineer had unfettered discretion to make and enforce rules as a lack of rulemaking

13   procedures for the State Engineer.  (*Id.*).

14        Plaintiff alleged eight causes of action.  (*Id.* at 12-17).  In the first cause of action,

15   Plaintiff  alleged a Fifth and Fourteenth Amendment procedural due process violation.  (*Id.*).

16   Specifically, Plaintiff alleged that the State Engineer acted under color of law and denied

17   Plaintiff its right to procedural due process because he afforded "Plaintiff no meaningful

18   opportunity to be heard with respect to the decision to deem groundwater supplemental"

19   thereby denying Plaintiff its right to use or alienate its groundwater rights.  (*Id.*).  Plaintiff

20   sought damages to be proven at trial.  (*Id.* at 13).

21        In the second cause of action, Plaintiff alleged a Fifth and Fourteenth Amendment

22   substantive due process violation.  (*Id.*).  Specifically, Plaintiff asserted that the State

23   Engineer's conduct was "so outrageously arbitrary as to constitute a gross abuse of

24   governmental authority" and that such "malicious, irrational, and plainly arbitrary action" was

25   not within "the legitimate purview of police power vested" in the State Engineer. (*Id.*). Plaintiff

26   alleged that the State Engineer had a "custom and/or policy of violating the substantive due

27   process rights of appropriators of groundwater" as demonstrated by his arbitrary and

28   capricious actions with respect to Plaintiff.  (*Id.*).

1    In the third cause of action, Plaintiff alleged a violation of substantive due process. (*Id.*

2  at 14).  Specifically, Plaintiff alleged that the State Engineer had and continues to violate its

3  substantive due process rights because the State Engineer failed to enact regulations affecting

4  Nevada's groundwater rights. (*Id.*).  Plaintiff asserted that the State Engineer was arbitrarily

5  denying it the use of appropriated groundwater rights by the arbitrary and capricious use of

6  government authority and the unfettered discretion granted to him by the Nevada statutes.

7  (*Id.*).  Plaintiff alleged that the Nevada statutes were facially unconstitutional as applied to

8  Plaintiff and those similarly situated. (*Id.*).

9    In the fourth cause of action, Plaintiff alleged a violation of substantive due process.

10  (*Id.*).  Specifically, Plaintiff asserted that the State Engineer deprived Plaintiff of its statutorily

11  perfected right by failing and refusing to honor the prior approval of Plaintiff's "non-

12  supplemental" groundwater rights. (*Id.*).

13    In the fifth cause of action, Plaintiff alleged a Fourteenth Amendment equal protection

14  violation.  (*Id.* at 15).  Specifically, Plaintiff alleged that the State Engineer deprived it of its

15  right to equal protection by denying Plaintiff its appropriated groundwater rights while

16  approving other applications for non-supplemental appropriations of groundwater under

17  substantially similar circumstances without a rational basis for treating Plaintiff differently. (*Id.*).

18    In the sixth cause of action, Plaintiff sought declaratory and injunctive relief.  (*Id.*).

19  Specifically, Plaintiff sought a declaration that NRS Chapters 532, 533, 534 were

20  unconstitutional on their face because they granted the State Engineer unfettered discretion

21  to make regulations and enact policies in the absence of any criteria to properly enact those

22  regulations.  (*Id.* at 15-16).  Plaintiff also argued that the statutes were unconstitutional as

23  applied to Plaintiff because they denied Plaintiff due process and equal protection. (*Id.* at 16).

24  Plaintiff sought an injunction barring the State Engineer from deeming groundwater rights in

25  Nevada "supplemental" such that they could not be used in the absence of surface water

26  rights.  (*Id.*).

27    In the seventh cause of action, Plaintiff sought declaratory and injunctive relief. (*Id.*).

28  Specifically, Plaintiff sought an order enjoining the State Engineer from denying the validity of

the 1960s Certificate of Appropriation for "non-supplemental" groundwater.  (*Id.* at 16-17).

Plaintiff argued that when the State Engineer issued a Certificate of Appropriation of Water

from an underground source to Jacobsen on February 1966, the appropriation was not

"supplemental" to a surface water right and the use was not constrained by the presence of

surface water.  (*Id.* at 16).

In the eighth cause of action, Plaintiff alleged a Fifth Amendment takings violation.  (*Id.*

at 17).  Specifically, Plaintiff alleged that it had a property interest in the groundwater subject

to the Certificate of Appropriation and that the State Engineer could not take its certified

appropriation of water without just compensation.  (*Id.*).  Plaintiff alleged that it suffered

damages in an amount that would be proven at trial.  (*Id.*).  For all causes of action, Plaintiff

sought attorneys' fees and costs pursuant to 42 U.S.C. § 1988.  (*Id.* at 12-17).

The State Engineer attached several exhibits to its motion to dismiss and reply to

motion to dismiss, including Jacobsen's amended 1960 application to appropriate public

waters, the 1960 Certificate of Appropriation of Water, the State Engineer's Ruling #6053, and

the State Engineer's Ruling #5829.  (*See* Mot. to Dismiss (#3) at 29-32; Reply to Mot. to

Dismiss (#13) at 19-31).  The amended application for permit to appropriate the public waters

of the State of Nevada filed by Jacobsen stated the following.  (Mot. to Dismiss (#3) at 29).

Jacobsen had filed the original application on July 5, 1960 with the State Engineer's office and

the corrected application on August 5, 1960.  (*Id.*).  The source of the proposed appropriation

was an underground source to be used to irrigate 370 acres and for domestic purposes.  (*Id.*).

The water was going to be "used to supplement the natural river flow to irrigate [the] lands

under the Carson River Decree."  (*Id.* at 30).  The amount of water to be appropriated was

limited to a yearly duty of 4.0 acre-feet per acre of land irrigated from all sources.  (*Id.*).  The

State retained the right to regulate the use of the water herein granted at any and all times.

(*Id.*).

The Certificate of Appropriation of Water, recorded in February 1966, and signed by

the State Engineer stated the following.  (*Id.* at 32).  Jacobsen had the right to water from an

underground source at a specified point of diversion for irrigation and domestic purposes.

1    (*Id.*).  The total duty for water under the land under the certificate could not exceed 4.0 acre-

2    feet per acre annually from all sources.  (*Id.*).  The appropriation could not exceed 1,478.64

3    acre-feet.  (*Id.*).  The certificate referenced the application number.  (*Id.*).

4         State Engineer Ruling #6053, dated September 16, 2010, stated the following in

5    response to Plaintiff's application filed on February 24, 2010.  (Reply to Mot. to Dismiss (#13)

6    at 19, 24).   The State Engineer determined that a hearing was not required given the

7    information before him.  (*Id.* at 20).  Plaintiff sought to change the existing manner of use for

8    the groundwater from irrigation and domestic purposes to quasi-municipal and domestic

9    purposes.  (*Id.* at 19).  The Gardnerville Town Water Company protested the application on

10   grounds that, *inter alia*, a change in the manner of use from supplemental ground water rights

11   to quasi-municipal and domestic would set a precedent toward other supplemental ground

12   water rights that existed throughout the Carson Valley.  (*Id.* at 19-20).  The original application

13   specified that Jacobsen was "filing for a supplemental water right" and the permit issued

14   reflected the supplemental nature of the water right granted by the language that the amount

15   of water to be appropriated was limited to "a yearly duty of 4.0 acre-feet per acre of land

16   irrigated from all sources."  (*Id.* at 20).  The original application specified that "this water [was]

17   supplemental to decreed water from the Carson River."  (*Id.* at 20-21).  The State Engineer

18   found that while the certificate reflected a full 4.0 acre-feet per acre total annual duty of

19   1,478.64, it also very clearly indicated that it was a supplemental water source.  (*Id.* at 21).

20   "Supplemental irrigation water rights [were] rights that ha[d] a place of use appurtenant to the

21   same place of use as an existing water right and [were] only available for use when the

22   underlying base water right [was] inadequate to meet irrigation demands."  (*Id.*).

23        The ruling further stated the following.  The State Engineer previously addressed the

24   nature of supplemental water rights in State Engineer Ruling #5823, dated March 18, 2008.

25   (*Id.*).   In that ruling, the State Engineer addressed protest issues that "asserted that a

26   supplemental groundwater right to Carson river surface-water rights should not be allowed to

27   be stripped and become a stand-alone right and also that if the water sought to be changed

28   [was] supplemental to a surface-water right, granting the application would in effect amount

to granting a new water right in an over-appropriated basin thereby conflicting with existing rights." (*Id.*).   In that ruling, the State Engineer found that the protest claim warranted the consideration of the actual use of the water in relation to the actual amount of water committed for use in the groundwater basin, reflecting "the long-standing policy that supplemental water rights [were] not allowed to be stripped and stand alone independently from the surface-water right and be considered a stand-alone water right for any duty, much less full duty." (*Id.*). There was "no change in the policy that supplemental water rights [could not] be converted to a stand-alone water right; they must be tied to the surface-water right." (*Id.* at 22).

With respect to the current application, the State Engineer found that the water sought to be changed in the application was a supplemental water right and "as such were not granted as stand-alone water rights." (*Id.* at 23).   The groundwater rights were tied to the relevant surface-water rights and were not allowed to be changed to a stand-alone water right because to do so would in effect be issuing a new appropriation in a quantity greater than the use of water under the supplemental water right. (*Id.*).   The State Engineer found that to allow the supplemental groundwater right to be converted to a stand-alone groundwater right would be in contradiction to many "rulings denying other water right applications." (*Id.*).   The State Engineer denied the application "on the grounds that the use of water as proposed as a stand-alone groundwater right [would] conflict with existing rights and thereby threaten to prove detrimental to the public interest." (*Id.* at 24).

State Engineer Ruling #5823, dated March 18, 2008, stated the following. (*Id.* at 26, 31).   On May 9, 2006, Lyon County filed an application to, *inter alia*, change the place and manner of use of a portion of the underground water previously appropriated from irrigation purposes to quasi-judicial purposes. (*Id.* at 26).   Lyon County recognized that it was the policy of the State Engineer to "not allow supplemental irrigation rights to be converted to municipal use." (*Id.* at 28).   "Supplemental irrigation water rights, as discussed in this ruling, [were] ground-water rights which [had] a place of use appurtenant to the same place of use as an existing surface-water right and [were] available for use when the surface-water flow [was] inadequate to meet irrigation demands." (*Id.*).   Generally, supplemental water rights would not

7

be allowed to be transferred to become stand alone water rights because of their supplemental nature that tied them to a primary surface-water right.  (*Id.* at 29).

**LEGAL STANDARD**

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all factual allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1150 n.2 (9th Cir. 2000).  Such allegations must be construed in the light most favorable to the nonmoving party. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).  In general, the court should only look to the contents of the complaint during its review of a Rule 12(b)(6) motion to dismiss.  However, the court may consider documents attached to the complaint or referred to in the complaint whose authenticity no party questions.  *Id.*; *see Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

The analysis and purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (quotations omitted).  To avoid a Rule 12(b)(6) dismissal, a complaint does not need detailed factual allegations;  rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007));  *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (stating that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").  Even though a complaint does not need "detailed factual allegations" to pass muster under 12(b)(6) consideration, the factual allegations "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

elements of a cause of action will not do." *Iqbal*, ___ U.S. at ___, 129 S.Ct. at 1949. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1966).

## DISCUSSION

The State Engineer filed a motion to dismiss all causes of action under Rule 12(b)(6). (Mot. to Dismiss (#3). The State Engineer argues that he is entitled to absolute judicial immunity because he was acting in a quasi-judicial manner in addressing Plaintiff's change applications. (*Id.* at 5-9). The State Engineer asserts that he is entitled to qualified immunity for the actions alleged to have been taken in his individual capacity. (*Id.* at 9-13). He asserts that he may not be sued in his official capacity because of Eleventh Amendment immunity. (*Id.* at 13-14). He argues that Plaintiff is not entitled to injunctive relief because Plaintiff does not seek to enjoin the State Engineer from taking some future action but instead seeks to have the Court review the factual basis for the State Engineer's decision and reverse it using the standard for injunctive relief rather than judicial review. (*Id.* at 15-16). The State Engineer asserts that there is no ongoing violation of federal law. (*Id.* at 16). The State Engineer argues that shortly after filing the complaint in this Court, Plaintiff filed a petition for judicial review in Nevada's Ninth Judicial District Court challenging Ruling No. 6053 on substantially the same grounds that are the basis of its § 1983 action here. (*Id.*).[2] The State Engineer argues that the Court should dismiss or stay the case based on *Colorado River* abstention. (*Id.* at 16-22). The State Engineer argues that Plaintiff cannot claim a property interest in a specific outcome for its water right change applications because it has no entitlement to use its water rights in a place or manner other than provided by its permit and there is no property interest in a new proposed use of its water right. (*Id.* at 22-23). The State Engineer argues that because Plaintiff has no property interest, it fails to state a claim for procedural and substantive due process. (*Id.* at 23). The State Engineer contends that Plaintiff may not pursue an action for taking because a taking of property must be raised in a separate action

---

[2] Although the State Engineer states that the Petition for Judicial Review is attached as Exhibit 3, Exhibit 3 is not attached. (Mot. to Dismiss (#3) at 16).

because, in a taking action, the taking is presumed proper and the issue is compensation. (*Id.* at 24).

In response, Plaintiff argues that the State Engineer misunderstood the gravamen of the complaint because it was challenging the State Engineer's characterization of groundwater rights.  (Opp'n to Mot. to Dismiss (#10) at 2).  Plaintiff asserts that the State Engineer's characterization of groundwater rights was unsupported by any valid rulemaking or by any rule, regulation, or statute and therefore was an arbitrary and capricious basis for denying the application. (*Id.*).  Plaintiff was not challenging the denial of the decision on due process grounds but was challenging the "way in which the State Engineer determined that as a matter of rule (law) that all groundwater [could] only be used in conjunction with surface water and not as a stand-alone right." (*Id.* at 3).  Plaintiff alleged that it was challenging an act of rulemaking/policymaking taken without due process of law and, therefore, absolute judicial immunity did not apply. (*Id.* at 3, 5-6).  Plaintiff contends that it was entitled to due process at whatever time and place the State Engineer reached a final determination about groundwater rights. (*Id.* at 8).  Plaintiff argues that the certificate of appropriation does not describe the groundwater right as supplemental. (*Id.* at 9).  Plaintiff asserts that because the State Engineer does not argue that the challenged rule was constitutionally adopted he cannot argue that he is entitled to qualified immunity. (*Id.*).  Plaintiff argues that it may seek injunctive relief against the State Engineer his official capacity because it seeks prospective relief that its groundwater right is not constrained by the long-standing policy relied upon by the State Engineer. (*Id.* at 10).  Plaintiff contends that *Colorado River* abstention does not apply to this case. (*Id.* at 12-14).

In reply, the State Engineer argues that the ruling did not find that all groundwater rights were supplemental but that Plaintiff's groundwater rights were supplemental. (Reply to Mot. to Dismiss (#13) at 2).  The State Engineer asserts that his actions in addressing the change application was judicial in nature and he is entitled to absolute judicial immunity. (*Id.* at 4).  He further argues that an administrative agency is not required to promulgate a regulation where regulatory action is taken to enforce or implement the necessary requirements of an

existing statute. (*Id.* at 5). The State Engineer reasserts that he is entitled to qualified immunity even if he erred in addressing the change application by adjudication rather than by rulemaking. (*Id.* at 7).

As an initial matter, it appears that Plaintiff is actually challenging the denial of his change application and not any alleged rulemaking by the State Engineer. State Engineer Ruling #6053 clearly states that the State Engineer interpreted Jacobsen's 1960s application and certificate as a permit for a supplemental water right for groundwater. (*See* Reply to Mot. to Dismiss (#13) at 20). As such, the State Engineer found that, based on the long-standing policy regarding supplemental water rights, a supplemental water right could not be stripped to stand-alone from the surface-water right. (*See id.* at 21). Based on that policy, the State Engineer found that because Plaintiff had a supplemental groundwater right, it could not be converted to a stand-alone water right. (*See id.* at 23). The ruling does not state anywhere that "all ground water can only be used in conjunction with surface water and not as a stand-alone right." (*See* Opp'n to Mot. to Dismiss (#10) at 3). Moreover, Plaintiff repeats in its opposition that the certificate does not describe its groundwater right as supplemental. (*See id.* at 9, 15-16). Thus, essentially Plaintiff's argument is that the State Engineer interpreted Jacobsen's 1960s application and certificate incorrectly. The Nevada Revised Statutes provide for judicial review of orders and decisions of the State Engineer for any person feeling aggrieved. *See* NRS § 533.450(1). The aggrieved person must initiate a proceeding "in the proper court of the county in which the matters affected or a portion thereof situated." *Id.* Therefore, Plaintiff's real complaint is that the State Engineer incorrectly found that the 1960s certificate of appropriation was for supplemental water rights and, as such, Plaintiff must file a petition for judicial review in Douglas County.

The Court takes judicial notice that Plaintiff has filed a petition for judicial review in the Ninth Judicial District in and for Douglas County. The Court finds that Plaintiff bases most of his claims on the statement that the State Engineer ruled that all groundwater could only be used in conjunction with surface water and not as a stand-alone right. However, this statement is false, as demonstrated by the State Engineer's actual ruling. Because the Court

finds that Plaintiff's true grievance is with the State Engineer's interpretation of the 1960s application and certificate, the Court will stay this case in abeyance, pursuant to the principles outlined in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), pending the outcome of the petition for judicial review.  The Court orders Plaintiff to raise its federal claims before that court.

Under the *Colorado River* doctrine, a court may stay federal proceedings pending the resolution of a concurrent state court proceeding involving the same matter based on considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Holder v. Holder*, 305 F.3d 854, 867 (9th Cir. 2002) (quoting *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983).  The Ninth Circuit has held that "exact parallelism . . . is not required" and that it is "enough if the two proceedings are 'substantially similar.'" *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989).  "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Commercial Cas. Ins. v. Swarts, Manning & Assoc.*, 616 F.Supp.2d 1027, 1032-33 (D. Nev. 2007).  Because "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule," a district court may dismiss or stay an action only in "exceptional circumstances." *Colorado River*, 424 U.S. at 813, 96 S.Ct. at 1244.

Under the exceptional-circumstances test, a court considers the following factors: (1) whether either court has assumed jurisdiction over a *res* or property; (2) the relative convenience of the forums; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls, and (6) whether the state proceeding is adequate to protect the parties' rights. *Nakash*, 882 F.2d at 1415. A court may also consider  whether a party is forum shopping in order to avoid adverse rulings by the state court. *Id.* at 1417.  These "factors are to be applied in a pragmatic and flexible way, as part of a balancing process rather than as a 'mechanical checklist.'" *Am. Int'l Underwriters (Phillipines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1257 (9th Cir. 1988) (quoting

1    *Moses H. Cone*, 460 U.S. at 16, 103 S.Ct. at 937).

2        Here, the Court finds that the state court has *in rem* jurisdiction over the water rights

3    issue based on the fact that Plaintiff's true dispute is over the State Engineer's determination

4    that Plaintiff possessed supplemental water rights and the fact that NRS § 533.450 requires

5    Plaintiff to challenge that decision in state court. *See United States v. Alpine Land & Reservoir*

6    *Co.*, 174 F.3d 1007, 1014 (9th Cir. 1999) (reiterating that water rights adjudications are more

7    in the nature of *in rem* proceedings).  The Court finds that, by staying the case, the Court will

8    avoid piecemeal litigation because the state court will interpret whether Plaintiff had a

9    "supplemental water right," the true basis for Plaintiff's federal claims.  Accordingly, this Court

10   will stay this case pending the outcome of the petition for judicial review.

11       That being said, the Court does find that the State Engineer is immune from civil

12   damages liability under the doctrine of judicial immunity. *See Ryan v. Bilby*, 764 F.2d 1325,

13   1328 n.4 (9th Cir. 1985) (holding that judicial immunity applies to all those who perform judge-

14   like functions).  In *Butz v. Economou*, 438 U.S. 478, 512-13, 98 S.Ct. 2894, 2914, 57 L.Ed.2d

15   895 (1978), the Supreme Court held that when adjudication within an agency shares enough

16   of the characteristics of the judicial process those who participate in such adjudication are

17   immune from suits for damages.  To determine whether the agency participant is entitled to

18   immunity, the Court considers: (a) the need to assure that the individual can perform his

19   functions without harassment or intimidation; (b) the presence of safeguards that reduce the

20   need for private damages actions as a means of controlling unconstitutional conduct; (c)

21   insulation from political influence; (d) the importance of precedent; (e) the adversary nature

22   of the process; and (f) the correctability of error on appeal.  *Cleavinger v. Saxner*, 474 U.S.

23   193, 202, 106 S.Ct. 496, 501, 88 L.Ed.2d 507 (1985).

24       In this case, the State Engineer was acting in a quasi-judicial manner when addressing

25   Plaintiff's change applications.  First, the State Engineer is responsible for adjudicating vested

26   water rights and deciding whether to grant or deny applications to appropriate water. *See* NRS

27   §§ 533.090-533.435.  The Court finds that there is a need to assure that the State Engineer

28   can perform his functions without harassment or intimidation because water rights in this State

are highly contentious and extremely valuable.  Second, the Nevada Revised Statutes have set forth safeguards as means of controlling unconstitutional conduct including specifying the information needed to apply for an application to appropriate water, the requirements for the development of water rights, a hearing process, and the ability to seek judicial review of the State Engineer's decision.  *See* NRS §§ 533.325-533.370, 533.380, 533.450, 533.455.  Third, the State Engineer's actions are insulated from political activity based on the statutory scheme provided by the Nevada Legislature, including an aggrieved party's ability to seek judicial review of the State Engineer's decision.  Fourth, although the State Engineer is not bound by *stare decisis*, the State Engineer's decision in this case was based on its prior treatment of supplemental water rights.  *See Desert Irrigation, Ltd. v. State of Nevada*, 944 P.2d 835, 841 (Nev. 1997) (holding that Nevada administrative agencies are not bound by *stare decisis*). Fifth, the Nevada Revised Statutes and the Nevada Administrative Code provide procedures for protests against the granting of an application, including hearings, discovery, witnesses, and evidence.  *See* NRS § 533.365; NAC §§ 533.100-533.380.  Finally, any error on the part of the State Engineer is correctable on appeal because Plaintiff may seek judicial review from the state district court and may appeal to the Nevada Supreme Court.  *See* NRS § 533.450, 533.455.  Therefore, the Court finds that the State Engineer's decision-making process on whether to grant or deny appropriation applications share enough characteristics with the judicial process and, thus, warrants immunity from civil damages liability.

Despite the State Engineer's immunity from monetary liability, the Court finds that Plaintiff may bring a suit for injunctive relief against the State Engineer in his official capacity. *See Wolfe v. Strankman*, 392 F.3d 358, 365 (9th Cir. 2004) (holding that a state official is a person under 42 U.S.C. § 1983 and may be sued in his or her official capacity for injunctive relief because official capacity actions for prospective relief are not treated as actions against the State) (citing *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). Additionally, this Court recognizes that Plaintiff does have a property right in his appropriated water rights.  *See Application of Filippini*, 202 P.2d 535, 537 (Nev. 1949) (holding that, in Nevada, a water right that has become fixed by appropriation according to the manner

provided by the water law is "a right which is regarded and protected as property").  However, the Court dismisses Plaintiff's takings claim because there is no taking for the denial of a permit for the approval of stand-alone water rights where such approval would be in derogation of other prior appropriated rights.  Accordingly, the Court grants the motion to dismiss Plaintiff's eighth claim for takings and stays the case pending the outcome of the petition for judicial review filed in state court.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that the State Engineer's Motion to Dismiss is GRANTED in part as to Plaintiff's eighth cause of action, but STAYED as to the remaining claims pending the outcome of the petition for judicial review filed in state court.


DATED: This  26th   day of July, 2011.

_____
United States District Judge

15